| aKUHN, Judge.
Plaintiff-appellant, Charles Brown, individually and ostensibly on behalf of the estate of Mabel Brown, appeals a judgment dismissing as prescribed his wrongful death claim against defendant-appellee, Our Lady of the Lake Regional Medical Center (OLOL). For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On April 4, 2000, Charles Brown filed a petition for damages in district court. According to the allegations of that petition, on May 7, 1997, Charles Brown’s 83-year-old mother, Mabel Brown, fell in her home, fracturing her left hip. She was admitted into OLOL and treated by defendants, Drs. Harold Voss, Joe Morgan, and Lawrence Messina.[2] At some time during her hospital stay, Mabel’s right hip was frac *1137 tured. After receiving medical attention for her injuries, Mabel was discharged.
In their respective briefs, the parties assert that on either April 28 or May 1, 1998, Charles and Mabel Brown requested that a medical review panel be established to review their claims of medical malpractice against OLOL (as well as the physician-defendants). The record does not contain a copy of the complaint requesting a medical review panel.[3] Thus, the date of initiation of the medical malpractice complaint cannot be established definitively. Mabel Brown died on March 15, 1999. On January 12, 2000, the medical review panel issued its opinion.
|sOn April 15, 2000, OLOL filed a peremptory exception of prescription, challenging the wrongful death claim asserted by Charles Brown in his April 4, 2000 petition for damages.[4] After hearing arguments, by judgment signed on August 14, 2000, the trial court dismissed Charles Brown’s wrongful death claim against OLOL as prescribed.[5] Charles Brown appeals.
DISCUSSION
Prescription statutes are intended to protect defendants against stale claims and the lack of notification of a formal claim within the prescriptive period. Giroir v. South La. Medical Ctr., 475 So.2d 1040, 1045 (La.1985). Ordinarily, the burden of proof is on the party pleading prescription; however, if on the face of the petition it appears prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. Adams v. Ochsner Clinic of Baton Rouge, 99-2502, p. 3 (La.App. 1st Cir. 11/3/00), 771 So.2d 258, 260, writ denied, 2000-3159 (La.1/12/01), 781 So.2d 558. Wrongful death actions are not within the scope of La.R.S. 9:5628, which governs the time plaintiffs have to assert medical malpractice claims. The prescriptive period for a wrongful death action is controlled by La.C.C. art. 3492, the one-year liberative period applicable to delictual actions. Taylor v. Giddens, 618 So.2d 834, 840-41 (La.1993). Thus, on the face of his petition, Brown’s wrongful death claim is prescribed, and the burden of proving its timeliness is his.
1 .Although the applicable prescriptive period for wrongful death actions is the one-year period set forth in La.C.C. art. 3492, the Medical Malpractice Act[6] (the Act) continues to govern and proeedurally control wrongful death actions. Taylor, 618 So.2d at 841.
“Charles Brown does not dispute that accrual of the one-year prescriptive period for wrongful death actions commenced on March 15, 1999, the day Mabel died. In *1138 stead, citing La.R.S. 40:1299.47A(2)(a) of the Act, he asserts that prescription was suspended when he filed his request for a medical review panel to review his allegations of malpractice.
Louisiana Revised Statute 40:1299.47A(2)(a) provides in relevant part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted ... until ninety days following notification, by certified mail ... to the claimant or his attorney of the issuance of the opinion by the medical review panel....
Charles Brown urges that the timely-filed, 1998 complaint requesting a medical review panel to review the Browns’ malpractice claims based on the injuries Mabel sustained as a result of the alleged negligence of the health-practitioner defendants suspended the accrual of prescription on his wrongful death claim until 90 days after the medical review panel rendered its opinion. He reasons that because the March 15, 1999 death of Mabel arose from the same “general factual situation” the medical review panel was established to review, OLOL was “clearly on notice that Charles Brown, [who] was not a victim of malpractice, would seek judicial relief for injury ... when he joined his mother in filing a medical malpractice claim.” Because wrongful death actions continue to be governed and procedurally-controlled by the Act under La.R.S. 40:1299.47A(2)(a), and he filed his petition for damages alleging the wrongful death claim within 90 days of the medical review panel’s opinion, Charles Brown maintains that it is timely. He cites Rowsey v. Jones, 26,823 (La.App. 2d Cir. 5/10/95), 655 So.2d 560, to buttress his contention.
|BThe plaintiff in Rowsey was Jeff Row-sey, Jr. His mother, Mrs. Lula Rowsey, was misdiagnosed by her doctors. His parents filed a complaint requesting a medical review panel pursuant to La.R.S. 40:1299.47. Both Mr. and Mrs. Rowsey died while the matter was pending. After the panel rendered its decision, Jess Row-sey, Jr. timely filed a petition in district court.
In Rowsey, the court found that Jess Rowsey, Jr.’s wrongful death claim, filed over one year after his mother died, had prescribed on its face. Thus, he bore the burden of proving its timeliness. 26,823 at p. 24, 655 So.2d at 576. Jess Rowsey, Jr. argued that prescription was suspended when, approximately six months after his mother died, his father amended the complaint before the medical review board, substituting Jess Rowsey, Jr. as a complainant. Id. The court concluded that the amended complaint was properly and timely presented to the medical review panel, thus suspending prescription on his wrongful death claim. The Second Circuit emphasized that “defendants were put on notice that Jess Rowsey, Jr. would seek judicial relief for injury arising out of the general factual situation alleged when he joined in his parents’ claim.” Id., 26,823 at p. 25, 655 So.2d at 577.
We find Charles Brown’s reliance on Rowsey misplaced. Unlike the Rowsey court, which on appellate review, had as evidence a copy of the complaint Mr. and Mrs. Rowsey filed requesting review of their malpractice claims by a medical review panel, we do not have the complaint filed by the Browns. Thus, we cannot ascertain “the general factual situation” of which OLOL was apprised in the complaint. More importantly and dispositively, the amendment relied on by the Row-sey court to conclude prescription was suspended under La.R.S. 40:1299.47A(2)(a) was one which was: (1) filed within one year of Mrs. Rowsey’s death; and (2) a modification of a complaint in the process of review by a medical review panel. Rowsey, 26,823 at pp. 24-25, 655 So.2d at *1139 576. Receipt of the ^amended complaint by the Louisiana Patient’s Compensation Fund (PCF), apparently via the medical review panel, advising of the inclusion of Jess Rowsey, Jr. as a party plaintiff in his capacity as the malpractice victim’s surviving son while the panel was actively reviewing the allegations of malpractice pri- or to the accrual of the one-year, wrongful death, prescriptive period permitted the court to impute to defendants the notice which the PCF/medical review panel had been given. Thus, the Rowsey defendants were not prejudiced.
Nothing in this record establishes any sort of notice of Mabel Brown’s March 15, 1999 death to OLOL or the PCF, via the medical review panel of in any other manner, until Charles Brown filed his petition in district court on April 4, 2000, which was after the accrual of the one-year, wrongful death, prescriptive period. Because the fact of Mabel Brown’s March 15, 1999, death was not made known to the PCF/medical review panel, as plaintiffs had done in Rowsey, notice cannot be imputed to OLOL. Lack of notice places Charles Brown’s wrongful death claim outside the scope of the review for which the Browns’ initial complaint. And the suspension of prescription under La.R.S. 47:1299.47A(2)(a) of the claims the Browns alleged in their 1998 complaint could not have included Charles Brown’s wrongful death claim, which arose on March 15, 1999.
Citing this court’s opinion in Scott v. Haley, 632 So.2d 793 (La.App. 1st Cir. 1993), Charles Brown maintains that under La. C.C.P. art. 1153, the filing of the April 4, 2000 petition for damages setting forth his wrongful death claim relates back to the original 1998 complaint the Browns filed with the PCF requesting formation of a medical review panel to review their allegations of negligence.
Louisiana Code of Civil Procedure article 1153 states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
|7The touchstone element giving rise to a claim of wrongful death is the death of the decedent. See La.C.C. art. 2315.2.[7] And La.C.C.P. art. 1153 permits post-prescription amendment only if the original pleading gives fair notice of the general factual situation from which the amended demand arises. Scott, 632 So.2d at 794-95; Medical Review Panel of Wempren v. UHS of New Orleans, Inc., 98-636 (La.App. 5th Cir. 1/26/99), 726 So.2d 477, 479, writ denied, 99-0545 (La.4/9/99), 740 So.2d 636. The crucial focus in determining whether or not a grant of prescription is warranted is on notice to the named defendants. Id.
In Scott, the original petition was filed less than a year after both the complained-of negligent conduct and the death. The original petition set forth facts describing the negligent conduct as well as the fact and date of the decedent’s death. Thus, not only did the Scott defendants have actual notice of the death, but that notice was contained within the pleading to which plaintiffs were attempting to relate back their wrongful death claim.
Because Mabel Brown’s death occurred subsequent to the filing of the Browns’ medical malpractice complaint, the original pleading could not have alleged the fact of her death. And nothing in this record *1140 establishes that OLOL knew, or should have known, of Mabel Brown’s death prior to the accrual of the one-year prescriptive period. Absent that knowledge by the defendant, fair notice of the general factual situation of a wrongful death claim simply cannot be established. Having failed to notify OLOL of Mabel Brown’s death within the 1998 medical malpractice complaint, Charles Brown is not entitled to a post-prescription amendment under La.C.C.P. art. 1153 because the April 4, 2000 petition does not timely give fair notice of the general factual situation to OLOL. And unlike the pleadings filed in Scott, the original pleading to which Charles Brown seeks to relate back the April 4, 2000 petition does not set forth the fact of the death of the malpractice victim. ^Accordingly, we find no error in the trial court’s conclusion that the April 4, 2000 petition filed by Charles Brown in district court setting forth his wrongful death claim does not relate back to the 1998 medical malpractice complaint filed by the Browns.
DECREE
The judgment dismissing the wrongful death claim of Charles Brown against Our Lady of the Lake Regional Medical Center as prescribed is affirmed. Costs of this appeal are assessed against Charles Brown.
AFFIRMED.

. None of these physician-defendants filed peremptory exceptions challenging the timeliness of the wrongful death allegations levied against each, appeared at the hearing in this matter, or were included within the dismissal of this wrongful death claim against OLOL.

. The only items included within the appellate record from the Browns' request for a medical review panel are a copy of "REASONS FOR OPINION'1 issued on January 12, 2000, by the medical review panel and four separate documents entitled "OPINION” also rendered by the medical review panel on January 12, 2000, against each of the healthcare practitioners named as defendants in Charles Brown's petition. These items were attached to Dr. Voss’s answer to the petition for damages.

. OLOL filed a peremptory exception of no right of action challenging Charles Brown’s representation of the estate of Mabel Brown, which was granted without objection. And a peremptory exception challenging the timeliness of the survival action alleged in Charles Brown’s petition for damages was passed without date.

. Although the court rendered a partial judgment as to one — but less than all — the wrongful death claims asserted by Charles Brown, because the judgment expressly states there is no just reason for delay and the trial court designated it as final, we are constrained to find the matter subject to immediate appellate review. See La. C.C.P. art. 1915B(1).

. See La.R.S. 40:1299.41-1299.48.

. Louisiana Civil Code article 2315.2A provides, in relevant part, "If a person dies due to the fault of another, suit may be brought....”